UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| STACIE A. SHEESLEY, as personal representative of Shane D. Sheesley, deceased; and DEEANN VERMEULEN, as personal representative of Thomas J. Vermeulen, deceased, | ) ) ) ) ) ) ) ) | CIV. 02-4185-KES |
| Plaintiffs, | ) ) | **ORDER REGARDING MOTIONS IN LIMINE** |
| vs. | ) ) | |
| THE CESSNA AIRCRAFT COMPANY, | ) ) | |
| Defendant and Third-Party Plaintiff, | ) ) ) | |
| and | ) ) | |
| RAM AIRCRAFT CORPORATION  and JOHN DOES 1 THROUGH 10 INCLUSIVE, | ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CAPITAL CITY AIR CARRIER, INC., | ) ) | |
| Third-Party Defendant. | ) | |

_____

| | | |
|---|---|---|
| GREAT WESTERN BANK, as Personal Representative of the Estate of Robert Bielstein, | ) ) ) ) | CIV.  03-5011-KES |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| THE CESSNA AIRCRAFT COMPANY, | ) ) | |
| Defendant and Third-Party Plaintiff, | ) ) ) | |

and                                              )
                                                 )
RAM AIRCRAFT CORPORATION  and                    )
JOHN DOES 1 THROUGH 10 INCLUSIVE,                )
                                                 )
     Defendants,        )
                                                 )
and                                              )
                                                 )
CAPITAL CITY AIR CARRIER, INC.,                  )
                                                 )
     Third-Party Defendant. )

---

STACIE A. SHEESLEY, as personal                  )          CIV.  03-5063-KES
representative of Shane D. Sheesley, deceased;   )
DEEANN VERMEULEN, as personal                    )
representative of Thomas J. Vermeulen,           )
deceased; and                                    )
GREAT WESTERN BANK, as personal                  )
representative of the estate of Robert Bielstein; )
                                                 )
     Plaintiffs,       )
                                                 )
vs.                                              )
                                                 )
FLIGHTSAFETY INTERNATIONAL, INC., a New          )
York corporation,                                )
                                                 )
     Defendant and     )
     Third-Party Plaintiff, )
                                                 )
and                                              )
                                                 )
RAM AIRCRAFT CORPORATION and                     )
CAPITAL CITY AIR CARRIER, INC.,                  )
                                                 )
     Third-Party Defendants. )

     This case arises out of an airplane crash that occurred on August 23,

2000, that killed Shane Sheesley, Thomas Vermeulen, and Robert Bielstein

(collectively referred to as plaintiffs).  Plaintiffs filed suit against Cessna

Aircraft Company (Cessna) and FlightSafety International, Inc. (FlightSafety).

The trial is scheduled to begin on October 31, 2006.  During the pretrial

2

conference, the court reserved ruling on the following pending motions in limine:

- Plaintiffs' motion in limine to preclude reference to Donald E. Sommer's settlement agreement with FAA (Docket 475)

- Plaintiffs' oral motion to strike Ronald E. Smith's expert report dated August 28, 2006

- Great Western Bank's motion in limine to exclude reference to Sean Bielstein's alleged use of illegal substances (Docket 483)

- Cessna's motion in limine (GARA) (Docket 454)

- Cessna's motion in limine to exclude evidence of other litigation (Docket 490)

- Cessna's motion in limine (other incidents) (Docket 488)

- Cessna's motion in limine (Richard McSwain) (Docket 486)

- Cessna's oral motion to strike Donald Frankenfeld's supplemental report

## I.      Donald Sommer's Settlement Agreement with FAA

Plaintiffs move in limine to prevent defendants from cross-examining Donald E. Sommer regarding Sommer's settlement agreement with the Federal Aviation Administration (FAA).  FlightSafety opposes the motion.

In 1987, the FAA commenced a certificate action against Sommer for alleged violations of federal aviation regulations.  Sommer's inspection authorization certificate (IA) was initially revoked.  Sommer appealed to an ALJ, who affirmed the revocation of Sommer's IA.  Sommer ultimately appealed the ALJ's decision to the full National Transportation Safety Board

3

(NTSB).  The NTSB reversed the ALJ's decision and remanded in light of an evidentiary error.  In 1991, pending remand, Sommer entered into a consent decree with the FAA, whereby Sommer admitted to violating federal aviation regulations by signing off on an aircraft as airworthy before guaranteeing that the aircraft's file contained all the necessary documentation.  As a result of this agreement, Sommer's IA was suspended for ninety days. (Docket 476-2).

Plaintiffs argue that this evidence is inadmissible because it is not proper impeachment evidence under either Fed. R. Evid. 609 or 608.  Rule 609 governs the admissibility of a witness's conviction of a crime to impeach the witness's credibility.  The FAA's suspension of Sommer's IA, however, does not appear to be a criminal conviction.  See 28 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6133, at 208 (1993) (stating that Rule 609 does not govern judgments in administrative proceedings).  Even if this is a criminal conviction, there is no evidence that it is either a crime punishable by more than one year of imprisonment or a crime of dishonesty.  Thus, the evidence is inadmissible under Rule 609(a). Further, the suspension of Sommer's IA occurred over ten years ago, which creates a rebuttable presumption against admissibility.  See Fed. R. Evid. 609(b); United States v. Keene, 915 F.2d 1164, 1169 (8th Cir. 1990). Evidence of a remote criminal conviction is only admissible if "the probative

4

value of the conviction supported by specific facts and circumstances substantially outweigh its prejudicial effect." Fed. R. Evid. 609(b). Here, the court finds that Sommer's concession over fifteen years ago that he failed to verify whether an airplane's file was complete before Sommer concluded that the airplane was airworthy has virtually no probative value. As a result, the court finds that this evidence is not admissible under Rule 609.

Nor is the evidence admissible under Rule 608, which governs the admissibility of specific acts by a witness to impeach the witness's credibility. Although Rule 608(b) generally prohibits introduction of extrinsic evidence of a witness's acts to impeach the witness, the rule permits the court, in its discretion, to allow cross-examination of the witness "regarding specific instances of a witness's own conduct if the past experiences are probative of a character for untruthfulness." United States v. Beal, 430 F.3d 950, 956 (8th Cir. 2005). Sommer's consent decree, however, is not probative of his character for truthfulness because nothing surrounding the facts of the consent decree indicate that Sommer is an untruthful person. See United States v. Honken, 378 F. Supp. 2d 970, 983 (N.D. Iowa 2004); see also Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6118 (1993) (suggesting that Rule 608(b) only applies to conduct that raises questions about the witness's veracity or honesty). Further, even if the evidence is probative of Sommer's character for truthfulness, the court

would not exercise its discretion to permit cross-examination on this issue because the consent decree is so remote in time that it has minimal, if any, probative value. See Tracy v. Roper, No. 4:04CV1104CEJ/MLM, 2005 WL 1703160, at *15 (E.D. Mo. July 20, 2005) (stating that trial courts have substantial discretion to exclude evidence under Rule 608(b) that is remote in time). Moreover, the Honorable David G. Larimer, United States District Judge for the Western District of New York, also concluded that Sommer's consent agreement with the FAA was not admissible under Rule 608. (Docket 476-2). The court concurs with Judge Larimer's reasoning and adopts it here.

FlightSafety argues that it can cross-examine Sommer regarding the consent decree because it affects his credentials as an expert. Even assuming, without deciding, that this does not violate Rule 608, the court prohibits cross-examination based on Fed. R. Evid. 403. Rule 403 permits the court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Under Rule 403, the court balances the probative value of the proffered evidence against the risk of unfair prejudice. See United States v. Johnson, 463 F.3d 803, 809 (8th Cir. 2006). In determining the probative value of proffered evidence, the court

6

should determine whether alternative evidence has "equal or greater probative value and poses a lower risk of unfair prejudice." United States v. Sewell, 457 F.3d 841, 844 (8th Cir. 2006).  Evidence is unfairly prejudicial when it would cause the jury to decide issues on an impermissible basis. See Cummings v. Malone, 995 F.2d 817, 824 (8th Cir. 1993).  "Generally, the balance of Rule 403 weighing should be struck in favor of admission." Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 885 (8th Cir. 2006).

As noted above, the court finds that Sommer's settlement agreement with the FAA is so remote in time that it has little, if any, probative value. Additionally, the court finds that permitting inquiry into this issue will create an unnecessary mini-trial regarding what rules Sommer was charged with violating, what rules he in fact admitted to violating, and why he conceded to violating those rules.  Thus, the court excludes the evidence because it finds its probative value is substantially outweighed by the risk of wasting time. See United States v. Milk, 447 F.3d 593, 600 (8th Cir. 2006).

## II.   Ronald E. Smith

During the pretrial conference, plaintiffs orally moved to strike Ronald Smith's expert report dated August 28, 2006 (2006 Report).  Plaintiffs argue that the 2006 Report is untimely because it discloses new opinions after the court's deadline for disclosure of expert testimony.  Cessna opposes the motion and argues that the 2006 Report is a timely supplemental report.

7

Fed. R. Civ. P. 26(a)(2) governs the mandatory disclosure of expert testimony.  According to Rule 26(a)(2)(A), "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Rule 26(a)(2)(B) provides that the disclosure of all retained experts shall be in the form of a written report signed by the witness.  Among other things, the written report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor [and] the data or other information considered by the witness in forming the opinions."  Unless modified by a court order, plaintiffs are obligated to disclose their retained experts' reports 90 days before trial, or 30 days before trial if the evidence is offered solely to rebut expert testimony of another party.  See Fed. R. Civ. P. 26(a)(2)(C).

Here, the court's scheduling order required Cessna to disclose its expert reports by November 22, 2004.  (Docket 144).  The 2006 Report was not disclosed until August 28, 2006.  Therefore, the report is untimely unless it qualifies as a Rule 26(e) supplemental report.

Rule 26(e) obligates parties to supplement previously disclosed reports "if the party learns that in some material respect the information disclosed is incomplete or incorrect . . . ."  At least in the expert testimony context, this duty to supplement applies to information previously disclosed in either the

8

expert's report or the expert's deposition.  See Fed. R. Civ. P. 26(e)(1).  Rule 26(e) does not, however, "license parties to freely circumvent deadlines" for initial expert disclosures.  Bowman v. Hawkins, No. Civ.A. 04-00370-CG-B, 2005 WL 1527677, at *2 (S.D. Ala. June 28, 2005).  The purpose of supplemental reports is to supplement the experts' opinion in their initial report, not "to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., 73 F.3d 546, 572 (5th Cir. 1996).  Rule 26(e) "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." Minebea Co. v. Papst, 231 F.R.D. 3, 6 (D.D.C. 2005).  If disclosed after the deadline for Rule 26(a)(2) disclosures, any wholly new opinions contained in a revised expert report are subject to the sanctions imposed by Rule 37(c).  See Transclean Corp. v. Bridgewood Servs., Inc., 101 F. Supp. 2d 788, 795-96 (D. Minn. 2000); see also Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, 109 F.3d 739, 744 (Fed. Cir. 1997).

The court finds that Smith's 2006 Report contains new opinions, and thus, does not qualify as a supplemental report.  The 2006 Report focuses entirely on the regulatory requirements and standard of care attributable to an FAA certified aviation mechanic.  (Docket 532-3).  Smith's original report does not discuss the standards imposed on aviation mechanics.  Instead, the

original report discusses the events leading up to the crash and opines that the crash was caused by pilot error. The only mention of maintenance in the original report is when Smith provides a brief, three-page list of the maintenance history of the aircraft that crashed in this case. The 2006 Report provides more detailed discussion of maintenance that spans 12 pages. Additionally, the 2006 Report focuses on generalized standards of care and educational requirements imposed on all FAA certified aviation mechanics. The 2006 Report does not discuss maintenance that was specifically performed on the accident aircraft.

Because the 2006 Report does not qualify as a supplemental report, it is untimely. Untimely disclosure of an expert opinion triggers Rule 37(c)(1) sanctions, including the exclusion at trial testimony on undisclosed opinions. See Fed. R. Civ. P. 37(e)(1); see also Tenbarge v . Ames Taping Tool Sys., Inc., 190 F.3d 862, 865 (8th Cir. 1999). "While sanctions under Rule 37(c)(1) are mandatory . . . exclusion of evidence should not apply if the offending party's failure was substantially justified or if the failure was harmless." Transclean Corp., 101 F. Supp. 2d at 795 (internal quotation omitted). Four factors determine whether exclusion is the proper sanction for undisclosed expert testimony: (1) the importance of the excluded expert testimony; (2) the party's explanation for failure to disclose; (3) the potential prejudice created by permitting use of the expert testimony at trial or on a

pending motion; and (4) the ability to cure any prejudice by granting a continuance.  See id.; see also Citizens Bank of Batesville, Ark. v. Ford Motor Co., 16 F.3d 965, 966 (8th Cir. 1994) (using four factors to determine whether the trial court can exclude witnesses not disclosed in compliance with the pretrial order).  The trial court has great discretion in determining whether to strike expert testimony that is either undisclosed or disclosed in contravention of the court's scheduling orders.  See Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 285 (8th Cir. 1995).

        As to the first factor, the court finds that Smith's testimony regarding information contained in the 2006 Report is not particularly important.  This report is being created to rebut two assertions made by Donald Sommer, one of plaintiffs' experts: "(1) that FAA certified mechanics have little knowledge and training concerning the maintenance and operation of aircraft exhaust systems, and (2), that special training is required to inspect Cessna 340A exhaust system." (Docket 532-2, at 2).  The majority of Smith's response, however, is a simple recitation of the federal regulations governing FAA certified aviation mechanics.  Rather than have Smith opine on these regulations, Cessna can merely cross-examine Sommer on how the regulations affect FAA certified mechanics.  Additionally, the court can take judicial notice of federal regulations.  See Stahl v. U.S. Dep't of Agric., 327

11

F.3d 697, 700 (8th Cir. 2003); <u>Holst v. Countryside Enters., Inc.</u>, 14 F.3d 1319, 1322 n.4 (8th Cir. 1994).

Regarding the second factor, the court finds that Cessna has not offered a legitimate explanation for the late disclosure of the expert report. Smith's 2006 Report purports to rebut statements made in Sommer's second deposition.  Sommers was deposed in July of 2005.  Smith's 2006 Report was not disclosed until August of 2006.  Cessna provides no just reason for waiting until over a year after Sommer's deposition to disclose this opinion.

Third, the court finds that plaintiffs are prejudiced by the late disclosure of Smith's 2006 Report because they have not been able to depose Smith regarding the new opinions.  Finally, the court finds that this prejudice cannot be alleviated by granting a continuance because trial is scheduled to commence in a week.  Additionally, a continuance would be inappropriate because this case has been pending for four years.

In sum, the court finds that Smith's 2006 Report is untimely. Additionally, the court finds that Cessna's failure to disclose the 2006 Report in a timely manner is neither harmless nor substantially justified.  Thus, Smith is prohibited from testifying about opinions that were not included in his original report.

### III.   Sean Bielstein's Use of Illegal Substances

Great Western Bank, as personal representative of Robert Bielstein, moves in limine to prevent defendants from cross-examining Sean Bielstein regarding his history of substance abuse.  Great Western Bank argues that the evidence should be excluded under Fed. R. Evid. 403 because the probative value of this evidence is substantially outweighed by the risk of unfair prejudice.  Cessna opposes the motion.

As noted above, Rule 403 permits the court to exclude relevant evidence when its probative value is substantially outweighed by the risk of unfair prejudice.  Cessna argues that evidence of Sean Bielstein's substance abuse is probative on the amount of wrongful death damages he can recover as a result of the death of his father, Robert Bielstein.  According to SDCL 21-5-7, beneficiaries in a wrongful death action may recover damages "proportionate to the pecuniary injury" resulting from the death.  Pecuniary injury includes "loss of companionship and society as expressed by, but not limited to, the words 'advice,' 'assistance' and 'protection,' without consideration for the survivors' grief and mental anguish."  Flagtwet v. Smith, 393 N.W.2d 452, 454 (S.D. 1986); see also Welch v. Haase, 672 N.W.2d 689, 698 (S.D. 2003).  Cessna argues that Sean Bielstein's substance abuse problem is relevant to show how much time he would have

spent with his father, and thus, how much advice, assistance, and protection he lost as a result of the death.

The court concludes, however, that this evidence's probative value is substantially outweighed by the risk of unfair prejudice. The court acknowledges that the amount of time Sean Bielstein spent with his father before his father's death is probative on the amount of wrongful death damages. See Flagtwet, 393 N.W.2d at 455-56 (discussing the time and activities the decedent spent with his children in calculating wrongful death damages). Cessna has not offered evidence, however, on how Sean Bielstein's substance abuse affected his relationship with his father. The court does not know how much time Sean spent with his father, or how often he was gone. The court does not know whether Sean Bielstein still has a substance abuse problem, or whether he is now sober. The court does not even know what substances Sean Bielstein allegedly abused. Thus, based on the evidence disclosed to the court, the court finds that the evidence of Sean Bielstein's substance abuse has minimal probative value.

The evidence does present a substantial risk of unfair prejudice, however. See Cummings, 995 F.2d at 824 (defining unfair prejudice). The court finds that there is a substantial risk that the jury will conclude that Sean Bielstein's substance abuse makes him a bad or unworthy person, and based on this impermissible consideration, refuse to award the appropriate

14

amount of damages.  See Shawhan v. Polk County, 420 N.W.2d 808, 810 (Iowa 1988) (discussing unfair prejudice associated with admitting evidence of past drug use); see also Simco v. Ellis, 222 F. Supp. 2d 1139, 1141 (W.D. Ark. 2000).

Further, the court notes that defendants have an evidentiary alternative that is just as probative without raising the same risk of unfair prejudice.  Defendants can simply cross-examine Sean Bielstein about his relationship with his father and the amount of time they spent together.  By doing so, defendants could reveal if Sean Bielstein and his father did not get along without delving into what caused that relationship to deteriorate, such as substance abuse.

In sum, the court finds that the probative value of the evidence of Sean Bielstein's alleged substance abuse is substantially outweighed by the risk of unfair prejudice.  The court thus bars cross-examination of Sean Bielstein on this issue.

## IV.    GARA

Cessna moves in limine to exclude evidence of any defect in any component, system, subassembly, or part of the accident aircraft except the left wastegate elbow.  Specifically, Cessna seeks to prevent plaintiffs from presenting evidence suggesting that either the aircraft's exhaust system or fuel system were defectively designed.  Cessna contends that the statute of

15

repose contained in the General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103-298, 108 Stat. 1552, bars a cause of action for defective design of both the exhaust and fuel systems.

In 1994, Congress adopted GARA to revitalize the general aviation industry.  Wright v. Bond-Air, Ltd., 930 F. Supp. 300, 303 (E.D. Mich. 1996). In relevant part, GARA provides an 18-year statute of repose applicable to a products liability action asserted against the manufacturer of either a general aviation aircraft or a part contained therein.  See GARA, § 2.  GARA also includes a "rolling provision," which restarts the repose period "with respect to any new component, system, subassembly, or other part which replaced another component system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage . . . ."  GARA, § 2(a)(2).

It is undisputed that the left wastegate elbow was replaced in 1986. Because this was within 18 years of the accident, the replacement of the wastegate elbow rolled the statute of repose for a civil action based upon a defect in the wastegate elbow.  See GARA, § 2(a)(2).  Therefore, plaintiffs can assert a cause of action for a defect in the left wastegate elbow.  Defendants contend, however, that GARA bars plaintiffs from recovering for a defective design of either the exhaust system or the fuel system.  Specifically, defendants argue that the replacement of the left wastegate elbow only rolled

16

GARA's 18-year statute of repose for the wastegate elbow, not the exhaust system as a whole or the fuel system.

The California Court of Appeals decided this issue in Hiser v. Bell Helicopter Textron, Inc., 4 Cal. Rptr. 3d 249 (Cal. Ct. App. 2003).  In Hiser, the plaintiff alleged that a helicopter crashed when the engines lost fuel supply because of a defective fuel system.  The defendant argued that the claim was barred by GARA because the helicopter was more than 18 years old.  In response, the plaintiff argued that the replacement of some of the components in the fuel system created "an entirely new fuel transfer system, thereby commencing a new 18-year limitation period with respect to defects in any element or component of the reconfigured system."  Id. at 650 (emphasis in original).  Relying on GARA's plain language, the California Court of Appeals disagreed.  The court concluded that the replacement of a part only rolls GARA's limitations period for defects in that specific part, and it "does not trigger a new limitation period under GARA with respect to defects in components of the system not replaced."  Id. at 651.  The repose period only rolls for the entire system if every part within that system is replaced.  See id. at 650; see also Hinkle v. Cessna Aircraft Co., No. 247099, 2004 WL 2413768, at *8 (Mich. Ct. App. Oct. 28, 2004) (unpublished) (noting that allowing a plaintiff to assert a claim against "any manufacturer of a part whenever a sub-part (that is the actual cause of the accident) was

17

replaced or added to it, even if the original part was over eighteen years of age" would effectively disregard GARA's statute of repose), appeal denied, 703 N.W.2d 809 (Mich. 2005).

Similarly, the Ninth Circuit in Caldwell v. Enstrom Helicopter Corp., 230 F.3d 1155 (9th Cir. 2000), indicated that a revision to a component to a system does not roll the statute of repose for the entire system.  In Caldwell, the plaintiff argued that a defective revision to a flight manual rolled GARA's 18-year repose period.  Although it held that a revised manual provision could trigger a new 18-year limitation period, the Ninth Circuit cautioned that the revision must be to the specific portion of the training manual that caused the accident: "Just as the installation of a new rotor blade does not start the 18-year repose period anew for purposes of an action for damages due to a faulty fuel system, a revision to any part of the manual except that which describes the fuel system would be irrelevant here."  Id. at 1158.  By doing so, the court indicated that replacement of a single part (one section of the training manual) does not roll the 18-year repose period for the system of which that part is contained (the whole training manual).

The court agrees with both the California Court of Appeals in Hiser and the Ninth Circuit in Caldwell in concluding that replacement of the left wastegate elbow only rolled GARA's statute of repose for defects in the wastegate elbow.  It did not restart the 18-year repose period for the exhaust

18

system as a whole, which contains parts that were older than 18 years when the crash occurred.  Similarly, replacement of the wastegate elbow did not roll GARA's statute of repose for the fuel system.  As such, GARA bars plaintiff from recovering for defects in either the exhaust system or the fuel system.

Because the plaintiff cannot recover for defectively designed exhaust or fuel systems, the court must determine whether evidence of these alleged defects is relevant.  See Fed. R. Evid. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence").  The court finds that the evidence is not relevant to establish liability.  As noted, GARA prevents holding Cessna liable for these alleged defects.  Additionally, evidence of a defective design of the exhaust or fuel systems is not relevant to whether the left wastegate elbow was defective.

Plaintiffs argue that the evidence is relevant to prove causation.  Plaintiffs suggest evidence of defects in the design of the exhaust system and fuel system is relevant to explain how the defective wastegate elbow caused the plane to crash.  The court disagrees.  Plaintiffs' theory of causation is that a crack occurred in the left wastegate elbow, which released super hot gases into the engine compartment.  These gases then heated a firewall,

19

which in turn heated fuel lines on the other side of the firewall.  The fuel lines ultimately melted, thereby causing a loss of fuel to the left engine and the plane to crash.  To prove causation, plaintiffs can present evidence that this chain of events occurred, and thus, the allegedly defective left wastegate elbow was a substantial factor in causing the crash.  See Therkildsen v. Fisher Beverage, 545 N.W.2d 834, 837 (S.D. 1996).  Evidence that Cessna defectively designed either the exhaust or fuel systems does not make this chain of events more likely to occur, however.  Instead, "design defect" is a legal term of art that triggers a manufacturer's liability for harm caused by a product with an unreasonably dangerous design.  See Peterson v. Safway Steel Scaffolds Co., 400 N.W.2d 909, 911 (S.D. 1987).  Whether Cessna's design of the exhaust or fuel systems was unreasonably dangerous has no effect on whether this chain of events in fact occurred.

Further, even if evidence of defective design of the exhaust or fuel systems is relevant, the court still excludes the evidence under Fed. R. Evid. 403.  Under Rule 403, the court balances the probative value of the proffered evidence against the risk of unfair prejudice.  See Johnson, 463 F.3d at 809. As noted above, evidence of defective design of the exhaust or fuel systems has little, if any, probative value.  Further, there is substantial risk of unfair prejudice.  There is a substantial risk that the jury will impermissibly infer that the left wastegate elbow is defective because Cessna defectively designed

20

other components.  See Fed. R. Evid. 404(b); see also Porous Media Corp. v. Pall Corp., 173 F.3d 1109, 1117 (8th Cir. 1999) (acknowledging risk that prior bad acts "often invite jury to base its decision upon sheer hostility toward a party or upon the impermissible inference that the party acted in conformity with its prior misdeeds").  Further, permitting this evidence will result in an unnecessary mini-trial regarding whether in fact the designs of the exhaust and fuel system are defective.  See Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 834 (8th Cir. 2005) (affirming exclusion under Rule 403 when admission of the evidence would result in a trial within a trial that would not assist the jury).  The court thus finds that the risk of unfair prejudice and waste of time substantially outweighs the probative value of this evidence, and the court excludes the evidence according to Fed. R. Evid. 403.

Plaintiffs rely on Carson v. Heli-Tech, Inc., No. 2:01-cv-643-Ft,-29SPC, 2003 WL 22469919 (M.D. Fla. Sept. 25, 2003), to support their position that evidence of defects in the exhaust and fuel systems are admissible to prove what caused the plane to crash.  Like here, the plaintiff in Carson argued that a defective replacement part, which was not GARA protected, acted in conjunction with defectively designed, but GARA protected, parts to cause the crash.  The court held that GARA prevented recovery for defective design of the GARA protected parts.  See id. at 4.  Nevertheless, the court held that

21

GARA's rolling provision applied to the replacement part because the plaintiff presented evidence that this part caused the crash by exacerbating the problems associated with the GARA protected parts.  This was sufficient evidence of causation to survive summary judgment.

The court finds that plaintiff's reliance on <u>Carson</u> is misplaced.  First, <u>Carson</u> never discusses the admissibility of evidence of defects in the design of the GARA protected parts.  Instead, the court merely determined that plaintiffs presented sufficient evidence that a non-GARA protected part caused the crash to survive summary judgment.  Second, <u>Carson</u> states that replacement of one part did not roll GARA's repose period for additional, GARA-protected parts that were a part of the same system.  Thus, <u>Carson</u> comports with the decision by the California Court of Appeals in <u>Hiser</u> and the Ninth Circuit in <u>Cadwell</u>.

In short, GARA prevents plaintiffs from recovering for defects in the design of the exhaust system as a whole or the fuel system.  Because plaintiffs cannot recover for these alleged design defects, the court excludes evidence of such defects under Fed. R. Evid. 401 and 403.  Plaintiffs can only offer evidence of defects in parts that were replaced within 18 years of the accident.

## V.    Other Litigation

Cessna moves in limine to prevent reference by plaintiffs to any other litigation.  Plaintiffs do not oppose this motion, but they argue that defendants should not refer to plaintiffs' previous settlement of litigation with Capital City Air Carrier (CCAC) or RAM Aircraft Corporation (RAM).  The court agrees.

Fed. R. Evid. 408 governs the admissibility of offers or agreements to settle a disputed claim.  According to Rule 408, evidence of the settlement agreement is not admissible to prove "liability for or invalidity of the claim or its amount."  The rule does not, however, prohibit offering the evidence "for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  Fed. R. Evid. 408; see also Kraft v. St. John Lutheran Church of Seward, Neb., 414 F.3d 943, 947 (8th Cir. 2005).

Here, FlightSafety wants to offer evidence of the previous settlements to assist the jury in determining the relative levels of fault among Cessna, FlightSafety, CCAC, and RAM for contribution purposes.  FlightSafety argues that the jurors need to be apprised of the previous lawsuits to provide context.  In response, plaintiffs argue that FlightSafety is attempting to offer this evidence to establish the level of FlightSafety's liability—an impermissible purpose under Fed. R. Evid. 408.  The court refrains from

deciding whether Rule 408 bars admission of this evidence, however, because even if admissible under Rule 408, the court would exclude the evidence based upon the Rule 403 balancing test.  See Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 310 (1997) (excluding evidence under Rule 403 even though it may have been admissible under Rule 408).

As discussed above, Fed. R. Evid. 403 permits the court to exclude evidence whenever its probative value is substantially outweighed by the risk of unfair prejudice.  The court finds that the fact that plaintiffs commenced and settled their claims against CCAC and RAM has limited probative value. First, the jury does not need to know that plaintiffs filed claims against CCAC and RAM to evaluate CCAC's and RAM's level of fault for contribution purposes.  Second, defendants can effectively cross-examine plaintiffs' experts regarding their testimony at the state trial without revealing where the testimony took place.  For instance, defendants could ask them about a previous time that they testified under oath.  See Sewell, 457 F.3d at 844 (evidentiary alternative that is equally probative but less prejudicial weighs against admissibility under Rule 403).  In short, informing the jury about plaintiffs' settlements with CCAC and RAM does not help defendants prove any part of their case.

The court does find, however, that evidence of previous settlements has a high risk for unfair prejudice.  As noted above, there is a risk of unfair

24

prejudice whenever the jury may decide an issue for an impermissible reason.  See Cummings, 995 F.2d at 824.  In this case, there is a substantial risk that the jury might impermissibly infer from the settlements that either CCAC or RAM, rather than Cessna or FlightSafety, caused the accident.  Cf. First Premier Bank v. Kolcraft Enters., Inc., 686 N.W.2d 430, 443-44 (S.D. 2004) (stating risk that jury will infer that the settling co-party is the culpable party), superseded on other grounds by SDCL 19-9-3.  Additionally, the jury may conclude that plaintiffs have recovered enough already, and thus, refuse to award an appropriate level of damages.  See Ensing v. Vulcraft Sales Corp., 830 F. Supp. 1017, 1019 (W.D. Mich. 1993).  As a result, after completing the Rule 403 balancing test, the court finds that the risk of unfair prejudice substantially outweighs any probative value associated with informing the jury that plaintiffs previously filed and settled claims against CCAC and RAM, or that plaintiffs went to trial with CCAC. The court thus excludes all such evidence.

## VI.    Other Incidents

Cessna moves in limine to prevent plaintiffs from offering evidence of prior incidents of wastegate elbow malfunctions in Cessna aircraft.  Cessna argues that five Service Difficulty Reports (SDRs) are inadmissible because: (A) the statements contained in the SDRs are hearsay; (B) the incidents reported in the SDRs are not substantially similar to the accident in this

case; and (C) the probative value of the evidence is substantially outweighed by the risk of wasted time.  Plaintiffs oppose the motion.

**A.     Hearsay**

Cessna argues that the statements contained in the SDRs are inadmissible hearsay.  Fed. R. Evid. 801(c) defines hearsay as an out-of-court statement "offered in evidence to prove the truth of the matter asserted."  Cessna argues that SDRs contain customer complaints indicating that Cessna designed wastegate elbows crack, and that these complaints are hearsay.  In response, plaintiffs argue that they are not offering the SDRs to prove the truth of the matter asserted.  Instead, plaintiffs proffer the SDRs to prove that Cessna had notice that the left wastegate elbow cracked, and thus, it acted negligently in ordering more frequent inspections instead of redesigning the exhaust system.

The United States District Court for the District of North Dakota in Olson v. Ford Motor Co., 410 F. Supp. 2d 855 (D.N.D. 2006), recently discussed whether customer complaints constitute inadmissible hearsay.  In Olson, the plaintiff was injured when the brakes on a Ford truck did not work properly.  Ford apparently maintained a business record that included all complaints from customers regarding its trucks, including complaints of brake failure.  Plaintiff obtained records of the complaints and offered them

26

as evidence at trial.  Ford argued that the complaints were inadmissible hearsay.

The court in <u>Olson</u> concluded that admissibility turned on the purpose for which plaintiff offered the evidence.  The court stated that the complaints are hearsay if offered to prove that Ford's brakes are defective.  When offered for this purpose, the plaintiff relies on the truth of the underlying complaint, <u>i.e.</u>, that the brakes failed.  <u>See id.</u> at 861-62.  The court held that plaintiff could offer the evidence, however, to prove that Ford had notice of the defective brakes.  In this instance, the evidence was not hearsay because it was not offered for the truth of the matter asserted.  <u>See id.</u> at 862.

<u>Olson</u> is factually identical to this case.  Like the plaintiff in <u>Olson</u>, plaintiffs here want to offer evidence indicating that other pilots or mechanics complained that Cessna's wastegate elbow cracked to prove that Cessna was on notice of the defect.  The veracity of the underlying complaints has no effect on Cessna's notice, and thus, the SDRs are not offered to prove the truth of the matter asserted.  As such, the SDRs are not inadmissible hearsay.

### B.  Substantially Similar Incidents

Defendants argue that the SDRs are not admissible to prove notice because the incidents reported in the SDRs are not substantially similar to the accident in this case.  Evidence of prior incidents or accidents is

27

admissible in a products liability case to prove "the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." Lovett ex rel. Lovett v. Union Pac. R.R., 201 F.3d 1074, 1080 (8th Cir. 2000). The evidence is only admissible, however, if the prior incidents are "substantially similar" to the facts of this case.  Id.  The prior incidents "'must be sufficiently similar in time, place or circumstance to be probative.'" First Sec. Bank v. Union Pac. R.R., 152 F.3d 877, 879 (quoting Thomas v. Chrysler Corp., 717 F.2d 1223, 1225 (8th Cir. 1983)).  The proponent bears the burden of establishing that the "facts and circumstances of the other incident" are substantially similar to this case.  Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 508 (8th Cir. 1993).

Cessna argues that plaintiffs fail to establish that the prior incidents reported in the SDRs are substantially similar to the case.  The court agrees that it cannot determine from the short factual summaries contained within the SDRs whether the incidents reported therein are substantially similar to the accident in this case.  The court finds, however, that plaintiffs should have the opportunity to lay foundation to establish that the incidents contained in the SDRs are factually similar.  See Lewy v. Remington Arms Co., 836 F.2d 1104, 1108 (8th Cir. 1988) (indicating that a party must lay foundation establishing that prior incidents are substantially similar).  As a

28

result, the court finds that Cessna's objection based upon lack of factual similarity is denied as premature.  Cessna can reassert this objection at trial, however, if Cessna believes that plaintiffs have failed to lay sufficient foundation.

### C.     Fed. R. Evid. 403

Finally, defendant argues that the SDRs are inadmissible because their probative value is substantially outweighed by the waste of time attributable to engaging in an unnecessary "mini-trial" on each of the complaints in the SDRs.  According to Fed. R. Evid. 403, the court can exclude evidence if its probative value is substantially outweighed by risk of wasting time in an unnecessary trial within a trial.  See Milk, 447 F.3d at 600.

Here, the court finds that the complaints contained in the SDRs are highly probative on whether Cessna was negligent in refusing to redesign the wastegate elbow.  Cessna's knowledge of defects in the design of the wastegate elbow go directly to facts at issue in this case.  See Peterson, 400 N.W.2d at 912 (stating that a products liability action sounding in negligence requires the plaintiff to prove "that the manufacturer or seller failed to exercise reasonable care").  Additionally, the court disagrees that admitting the SDRs will result in an unnecessary mini-trial on whether the wastegate elbows contained in the SDRs were in fact broken.  The court thus finds that

SDRs' probative value is not substantially outweighed by the risk of wasting time and refuses to exclude the SDRs under Rule 403.

## VII.   Richard McSwain

Cessna moves in limine to exclude Dr. Richard McSwain from testifying in place of Dr. Ramsay.  Substantively, this motion is identical to plaintiffs' motion in limine to substitute Dr. McSwain for Dr. Ramsay. Although the court denied plaintiffs' motion at the pretrial conference, it did not explicitly rule on Cessna's motion.  Accordingly, the court grants Cessna's motion in limine to prevent the substitution of Dr. McSwain for Dr. Ramsay for the same reasons that the court stated at the pretrial conference in denying plaintiffs' motion in limine seeking to substitute Dr. McSwain for Dr. Ramsay.

## VIII.  Donald Frankenfeld

At the pretrial conference, Cessna orally moved to strike the expert report of Donald Frankenfeld dated September 28, 2006, as untimely.  In response, plaintiffs withdrew this expert report.  Accordingly, Cessna's oral motion is granted.

Based on the foregoing, it is hereby

ORDERED that plaintiffs' motion (Docket 475) in limine to prevent reference to Donald E. Sommer's settlement agreement with the FAA is granted.

30

IT IS FURTHER ORDERED that plaintiffs' oral motion to strike expert report of Ronald E. Smith is granted.

IT IS FURTHER ORDERED that Great Western Bank's motion (Docket 483) in limine to exclude reference to Sean Bielstein's use of illegal substances is granted.

IT IS FURTHER ORDERED that Cessna's motion (Docket 454) in limine (GARA) is granted.

IT IS FURTHER ORDERED that Cessna's motion (Docket 490) in limine to exclude evidence of other litigation is granted.

IT IS FURTHER ORDERED that Cessna's motion (Docket 488) in limine (other incidents) is denied.

IT IS FURTHER ORDERED that Cessna's motion (Docket 486) in limine (Richard McSwain) is granted.

IT IS FURTHER ORDERED that Cessna's oral motion to strike the supplemental report of Donald Frankenfeld is granted.

Dated October 24, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE